lml/mm

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BARRY ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 08-3103-JAR |
| GREG PETERS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Pro se* plaintiff Barry Robinson brings this lawsuit against Kansas Highway Patrol Trooper Gregg Peters alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant used excessive force by shooting him following a high-speed chase, and claims the shooting thus violated his Fifth, Eighth, and Fourteenth Amendment rights. This matter is before the Court on defendant's Motion for Summary Judgment (Doc. 39). Plaintiff has not filed a response and the time to do so has expired.[1] As explained more fully below, defendant's motion is granted.

**I.     Summary Judgment Standard**

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . . shall constitute a waiver of the right thereafter to file such brief or response. . . ."[2] Furthermore,

---

[1] *See* D. Kan. R. 6.1(d)(2) (requiring a response to a dispositive motion to be filed within 23 days). On December 22, 2009, after plaintiff responded to an Order to Show Cause why the case should not be dismissed for failure to respond (Doc. 44), the Court issued an Order granting plaintiff additional time until January 25, 2010, to respond to defendant's motion for summary judgment (Doc. 47). To date, plaintiff has not responded.

[2] D. Kan. R. 7.4.

if a "respondent fails to file a response within the time required . . . the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice."[3] Nevertheless, "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[4] This will be the case where the movant fails to make out a prima facie case for summary judgment.[5] It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[6] In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[7]

Summary judgment is appropriate if the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."[8] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[9] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[10] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[11]

---

[3] *Id.*

[4] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985))). The Court notes, however, that failing to file a timely response to a motion for summary judgment still waives the right to thereafter respond or otherwise controvert the facts alleged in the motion. D. Kan. R. 7.4.

[5] *Id.* (citations omitted).

[6] *Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[7] *Id.*

[8] Fed. R. Civ. P. 56(c).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Id.*

[11] *Id.* at 251–52.

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[12] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[13] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[14] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15] When examining the underlying facts of the case, the court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[16]

Because plaintiff is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[17] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[18] The court need only accept as true the plaintiff's "well-

---

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[14]*Id.*

[15]*Id.*

[16]*See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[17]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[18]*Id.*

pleaded factual contentions, not his conclusory allegations."[19] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[20]

## II.     Uncontroverted Facts

All material facts set forth by defendant are deemed admitted for the purpose of summary judgment, as plaintiff failed to specifically controvert them as required under D. Kan. R. 56.1(a).[21] The Court also considers the police videotape capturing the events in question.[22]

Defendant is a Kansas Highway Patrol Trooper. On April 22, 2006, plaintiff entered a gas station in Independence, Missouri, demanded money from the cashier, and took the money. Plaintiff then demanded Kimberley Paine's white Hyundai Sonata who was sitting in the driver's seat of this car, outside of the gas station. She complied, and plaintiff drove away from the gas station. Independence police officers pursued plaintiff onto I-435. Several police officers from several departments joined in the pursuit, including defendant Peters. Plaintiff led the police officers into Kansas via I-435, and then proceeded north on Kansas Highway 7 ("K-7"). Plaintiff fled from the officers at speeds in excess of 100 miles per hour. He avoided stop sticks placed in the road by Kansas Highway Patrol officers. Plaintiff also drove through a red

---

[19]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[20]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)(insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[21]That rule provides: "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. Rule 56.1(a).

[22]*See Scott v. Harris*, 550 U.S. 372, 378-79 (2007) (discussing court's use of police video when analyzing excessive force claim).

light amid heavy traffic.

From highway K-7, plaintiff exited onto I-70 in Wyandotte County. After he drove across a highway median and three lanes of traffic while attempting to drive on the entrance ramp to I-70, plaintiff was forced into the Kansas Department of Transportation area. Then, with his patrol vehicle, defendant hit plaintiff's passenger-side, rear door. Because plaintiff's vehicle stopped, defendant thought he had disabled it, so he exited his patrol vehicle. Defendant ordered plaintiff to exit the vehicle, but he failed to respond. Instead, plaintiff began backing quickly in a reverse circular motion towards defendant, placing defendant in fear for his life because he thought plaintiff was attempting to run him over.

In an attempt to stop plaintiff's vehicle, defendant fired several shots from his service revolver at the passenger rear tire. However, plaintiff continued to drive towards defendant, so defendant fired several shots into the vehicle, striking plaintiff at least once. Believing plaintiff was still attempting to flee, Highway Patrol Trooper Brian Grunder drove his vehicle into the area where plaintiff and defendant were located, striking plaintiff's vehicle on the front passenger side. Upon several verbal requests to exit his vehicle, plaintiff still refused. Consequently, Lenexa, Kansas, K-9 unit Police Officer Greg Bogart sent his K-9 into plaintiff's vehicle. The K-9 made contact with plaintiff, but did not bite him. Plaintiff exited his vehicle and the Highway Patrol took him into custody.

After investigating the incident, Wyandotte County District Attorney Jerome Gorman concluded that defendant's use of force was justified under the law and facts, and no criminal charges were filed against him. Furthermore, on these facts plaintiff was charged in Wyandotte County District Court with one count of attempted aggravated assault on a law enforcement

officer and a second count of eluding a police officer. On September 5, 2006, plaintiff plead no contest to the charges. Plaintiff also acknowledged in his deposition that he backed towards defendant.

## III. Discussion

Plaintiff brings his claims pursuant to § 1983. It is well-settled that § 1983 is not a source of substantive rights; rather, it provides a remedy to vindicate federal rights established elsewhere.[23] Thus, to establish a claim under § 1983, plaintiffs must allege a "deprivation of a federally protected right under color of state law."[24] Plaintiff brings his § 1983 claims against defendant in his official and individual capacity, alleging defendant violated plaintiff's Fifth, Eighth, and Fourteenth Amendment rights by using excessive force through his duties as a law enforcement officer.

### A. Official Capacity

Defendant argues that as an officer of the State of Kansas, he is entitled to sovereign immunity in his official capacity. The Eleventh Amendment doctrine of sovereign immunity bars actions against a State, its agencies and its officials acting in their official capacities,[25] including actions arising under § 1983.[26] As a State Trooper, defendant enjoys sovereign immunity from claims against him in his official capacity.[27] Plaintiff alleges no facts by which the Court might find that such immunity has been waived or abrogated, and the Court therefore

---

[23] *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

[24] *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994).

[25] *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).

[26] *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1415 (D. Kan. 1997).

[27] *See Taggart v. Oklahoma*, 74 F. App'x 880, 882 (10th Cir. 2003) (citing *Eastwood v. Dep't of Corr.*, 846 F.2d 627, 632 (10th Cir. 1988)).

lacks jurisdiction over plaintiff's official capacity claim against defendant.[28]

**B. Individual Capacity**

Defendant argues that 1) plaintiff's § 1983 action is inconsistent with his plea, 2) plaintiff fails to state a claim for excessive force under the Fourth Amendment, and 3) defendant is entitled to qualified immunity. The Court addresses each argument in turn.

**1. *Heck* Application**

Defendant first argues that plaintiff's claims are barred by *Heck v. Humphrey*.[29] In *Heck*, the Supreme Court held that a state prisoner could not bring an action for monetary damages when a judgment for the plaintiff would "necessarily imply the invalidity of his conviction or sentence[.]"[30] Such a complaint must be dismissed "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[31] Defendant asserts that, because plaintiff pleaded no contest to the charge of attempted aggravated assault on a law enforcement officer and his conviction has not been invalidated, *Heck* bars his current § 1983 suit claiming excessive force. The Court disagrees.

Aggravated assault of a law enforcement officer is "an aggravated assault, as defined in K.S.A. 21-3410 . . . committed against a uniformed or properly identified state, county or city law enforcement officer while such officer is engaged in the performance of such officer's

---

[28]*See Kikumura v. Osagie*, 461 F.3d 1269, 1299 (10th Cir. 2006).

[29]512 U.S. 477 (1994).

[30]*Id.* at 487.

[31]*Id.* A plaintiff can bring such a complaint if he can prove that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.*

7

duty."[32] Plaintiff pleaded no contest to the charge of attempted assault on a law enforcement officer, and thus accepted the facts surrounding the no contest plea. Plaintiff alleges defendant used greater force than necessary to stop the plaintiff given the circumstances.

In *Heck*, the Court held that when the plaintiff's action "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[33] Defendant claims because the attempted assault and the excessive force occurred contemporaneously, that would require the officer to act unlawfully, and therefore such action would not be "in the performance of such officer's duty" as required by the elements of attempted assault of a law enforcement officer.[34] Thus, defendant argues, plaintiff should be barred from bringing the § 1983 suit because a judgment favorable to the plaintiff would negate the implied element that defendant be engaged in *lawful* action. This court has declined to include such an additional element to K.S.A. § 21-3411 requiring the officer's lawful performance of his duties.[35] Here, the actions giving rise to the § 1983 action stopped the impending assault; thus, the assault never actually happened because of the actions taken by the officer. It is possible for an officer to stop an attempted assault by using too much force; doing so does not negate the underlying attempted assault.[36] Because it is possible for both plaintiff to have attempted to assault defendant and for

---

[32]K.S.A. § 21-3411.

[33]*Heck*, 512 U.S. at 487.

[34]*See* K.S.A. § 21-3411.

[35] *See Robbins v. Chronister*, No. 97-3489-JWL, 2000 WL 1389616, *4 (D. Kan. July 28, 2000); *see also Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999) (despite conviction on resisting arrest charges, plaintiff's pursuit of arresting officer in § 1983 action for excessive force not barred by *Heck*).

[36]*Robbins,* 2000 WL 1389616, at *4.

defendant to have used greater force than necessary to stop the impending assault, *Heck* does not bar plaintiff's suit against defendant.

## 2. Fourth Amendment

Plaintiff claims defendant violated his Fifth, Eighth, and Fourteenth Amendment rights by using excessive force against him. As defendant correctly acknowledges, in the Tenth Circuit, excessive force claims must be analyzed "under the reasonableness standard of the Fourth Amendment."[37] Therefore, plaintiff fails to state a cause of action for an excessive force claim under § 1983 in the Tenth Circuit. Even analyzing plaintiff's claim as alleging a Fourth Amendment violation, defendant is entitled to summary judgment because he acted objectively reasonable under the circumstances.

Law enforcement officers are entitled to use force while executing their duties, but the force must be "objectively reasonable."[38] Defendant's use of his service weapon upon plaintiff is justified only if a reasonable officer in his position would have had probable cause to believe there was a threat of serious physical harm to himself or others.[39] Analyzing the reasonableness defendant's use of his firearm, it is necessary to weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."[40] The factors the court considers in this balancing include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

---

[37] *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 704 (10th Cir. 1995).

[38] *Graham v. Connor*, 490 U.S. 386, 396-99 (1989).

[39] *Id.* at 396.

[40] *Scott v. Harris*, 550 U.S. 372, 383 (2007).

arrest by flight."[41] Also relevant is "whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force."[42]

The uncontroverted facts of this case establish that, at the conclusion of a dangerous, high-speed chase, plaintiff quickly backed directly towards defendant. Plaintiff ignored several commands to exit his vehicle. Upon plaintiff's failure to stop, shooting into the car was objectively reasonable. Defendant had reason to believe his life was in jeopardy, and a reasonable officer in defendant's position would believe likewise. Plaintiff's actions posed an immediate substantial threat to defendant's safety. Plaintiff also had no reason to back quickly toward defendant other than to harm him, which is consistent with his prior acts of dangerously evading arrest. Furthermore, there is no reason to believe defendant's own conduct created the need to shoot at plaintiff. Therefore, defendant's actions were reasonable under the Fourth Amendment.

### 3. Qualified Immunity

Alternatively, defendant asserts that, even if his actions were not objectively reasonable under the Fourth Amendment, he is entitled to qualified immunity. Defendant's theory is that, if he did use more force than objectively necessary to stop plaintiff from running him over, the mistake was reasonable. The Court agrees.

Qualified immunity shields government officials from civil suits for damages so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."[43] Qualified immunity protects "all but the plainly

---

[41]*Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008) (citation omitted).

[42]*Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (citation omitted).

[43]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

incompetent or those who knowingly violate the law."[44]  When a defendant asserts qualified immunity as a defense to civil suit, the burden shifts to the plaintiff to show, "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[45]  The court has the discretion to determine which prong of this test to analyze first.[46]

The qualified immunity inquiry acknowledges that officers may make reasonable mistakes by using more force than necessary, but may still act reasonably.[47]  In analyzing whether defendant violated a constitutional right of plaintiff by using excessive force, the Court must examine whether, assuming defendant did mistakenly use more force than reasonable to stop the plaintiff, such a mistake was reasonable.  In this case, the Court finds that even if defendant was mistaken as to the amount of force necessary to prevent plaintiff from running him over, such a mistake was reasonable under the uncontroverted facts.  As witnessed by Trooper Grunder and Sergeant Bogart, defendant Peters acted reasonably in firing his service weapon at plaintiff because of the threat to his life after a prolonged high speed chase.[48]

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED.**

**IT IS SO ORDERED.**

Dated: <u>March 22, 2010</u>

---

[44]*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[45]*Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)).

[46]*Id.*

[47]*Sacier v. Katz*, 533 U.S. 194, 206 (2001) (overruled in part by *Pearson*, 129 S. Ct. at 808 (rejecting *Sacier*'s mandatory order for analyzing qualified immunity claims).

[48]*Id.* ("Qualified immunity operates in this case, then, just as it does in others, to protect officers from the sometimes 'hazy border between excessive and acceptable force[.]'") (quotation omitted).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE